# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# COLUMBUS DIVISION

**LAUREL READINGER and LEVI BARTHOLOMEW, individually and on behalf of all others similarly situated,**

    **Plaintiffs,**

v.

**LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,**

    **Defendant.**

Civil Action No. 2:20-cv-6027

**JURY DEMANDED**

## COMPLAINT

COME NOW the Plaintiffs, Laurel Readinger and Levi Bartholomew (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, and state and allege the following for their Complaint against Liberty Mutual Personal Insurance Company ("Defendant" or "LMPICO"):

### OVERVIEW OF CLAIMS

1. This lawsuit concerns only actual cash value coverage ("ACV") for buildings and structures. This lawsuit does not concern replacement cost value coverage ("RCV").

2. Under the Defendant's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to damaged buildings and structures. On the other hand, RCV payments are made retrospectively, after repairs have been completed.

3. Defendant calculates ACV under the "replacement cost less depreciation" ("RCLD") methodology. When calculating ACV for buildings and structures under the RCLD methodology, an insurance company estimates the full amount of labor and new materials required to repair or replace the property, then subtracts depreciation for physical deterioration.

4. Courts in several jurisdictions hold that the RCLD methodology is reasonably intended to result in an ACV payment to the policyholder in an amount that allows the policyholder to return the damaged property to its *status quo ante*, thereby precluding the withholding of labor from ACV payments. *See generally Mitchell v. State Farm Fire and Cas. Co.*, 954 F.3d 700, 706-07 (5th Cir. 2020). An exception occurs—not at issue in this lawsuit—when a property insurer expressly states in its policy forms that it can withhold labor from an ACV payment. *E.g.*, *Kurach v. Truck Ins. Exchange*, 235 A.2d 1106 (Pa. 2020).

5. This lawsuit concerns the withholding of certain labor that Defendant itself determined will be incurred if the policyholder undertakes repairs. However, this lawsuit does *not* concern labor that is expressly permitted to be withheld under the express terms of Defendant's insurance policies.

6. Property insurers attach different labels to justify the withholding of certain labor from ACV payments, such as "paid when incurred" or "labor depreciation." *E.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) (property insurer cannot withhold labor from ACV payments because it has not been incurred); *Mitchell*, 954 F.3d at 706-07 (property insurer cannot withhold ordinary labor from ACV payments under the auspice of "depreciation").

7. Regardless of the artificial label affixed by the property insurer to the practice of withholding labor from an ACV payment, the result is the same—a deficient ACV payment. This

lawsuit seeks to remedy the improper withholdings of labor from Plaintiffs' and class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

8. Plaintiff Laurel Readinger ("Readinger") is a citizen and resident of Cuyhoga County, Ohio. At all times relevant hereto, Readinger owned a dwelling and other structures located at 16308 Pearldale Avenue, Cleveland, Ohio (the "Readinger Home").

9. Plaintiff Levi Bartholomew ("Bartholomew") is a citizen and resident of Delaware County, Ohio. At all times relevant hereto, Bartholomew owned a home located at 2443 Dauer Ct., Powell, Ohio (the "Bartholomew Home").

10. Defendant Liberty Mutual Personal Insurance Corporation ("LMPICO") is organized under the laws of the State of Massachusetts with its principal place of business in Boston, Massachusetts.

11. LMPICO is authorized to and does sell property insurance for buildings and structures in several states, specifically including the states of Arizona, Connecticut, Illinois, Kentucky, Maryland, Ohio, Tennessee, and Utah.

12. LMPICO engaged in the challenged insurance coverage practices described herein in a uniform manner and pursuant to a uniform policy.

13. The events giving rise to the individual claims asserted by Bartholomew that are the subject of this action occurred in the Southern District of Ohio. Liberty Mutual has insurance agents in the Southern District of Ohio for the conduct of its usual and customary business, including the sale and servicing of property insurance policies.

14. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

15. This Court has personal jurisdiction over Defendant because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in Ohio.

**FACTS**

**A. The Readinger Property Insurance Policy and Casualty Loss**

16. At all times relevant hereto, Readinger was an insured pursuant to an insurance contract whereby LMPICO agreed to insure, *inter alia,* the Readinger Home against property damage, bearing Policy No. H3V28842947940 (the "Readinger Policy").

17. The Readinger Policy provided insurance coverage for direct physical loss to the buildings and other structures located on the insured premises, except as specifically excluded or limited by the Readinger Policy.

18. All of the claims set forth in this pleading only concern property insurance coverage for structural damage (*e.g.*, homes, buildings and other structures) and *not* personal property (*e.g.*, clothes and furniture).

19. Pursuant to the Readinger Policy, Readinger paid LMPICO an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

20. On or about April 9, 2020, the Readinger Home located on the Insured Premises suffered accidental direct physical loss by wind (the "Readinger Loss").

21. The Readinger Policy was in effect at the time of the Readinger Loss, and the Readinger Loss is compensable under the terms of the Readinger Policy. As it relates to the Readinger Loss, there is no applicable exclusion.

22. Readinger notified LMPICO of the Readinger Loss and made a claim against the Readinger Policy.

23. After its inspection, LMPICO determined that the Readinger Loss was covered by the terms of the Readinger Policy.

24. LMPICO calculated its ACV payment obligation to Readinger pursuant to the RCLD methodology.

25. The Readinger Policy does not define ACV so as to permit the labor withholdings complained of herein.

### B. The Bartholomew Property Insurance Policy and Casualty Loss

26. At all times relevant hereto, Bartholomew was an insured pursuant to an insurance contract whereby LMPICO agreed to insure, *inter alia,* the Bartholomew Home against property damage, bearing Policy No. H3V28134252070 (the "Bartholomew Policy").

27. The Bartholomew Policy provided insurance coverage for direct physical loss to the buildings and other structures located on the insured premises, except as specifically excluded or limited by the Bartholomew Policy.

28. Pursuant to the Bartholomew Policy, Bartholomew paid LMPICO an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

29. On or about March 7, 2020, the Bartholomew Home located on the Insured Premises suffered accidental direct physical loss by wind (the "Bartholomew Loss").

30. The Bartholomew Policy was in effect at the time of the Bartholomew Loss, and the Bartholomew Loss is compensable under the terms of the Bartholomew Policy. As it relates to the Bartholomew Loss, there is no applicable exclusion.

31. Bartholomew notified LMPICO of the Bartholomew Loss and made a claim against the Bartholomew Policy.

32. After its inspection, LMPICO determined that the Bartholomew Loss was covered by the terms of the Bartholomew Policy.

33. LMPICO calculated its ACV payment obligation to Bartholomew pursuant to the RCLD methodology.

34. The Bartholomew Policy does not define ACV so as to permit the labor withholdings complained of herein.

### C. LMPICO's Calculation of Readinger's ACV Payment

35. In adjusting the Readinger's claim, LMPICO affirmatively and unilaterally chose to use the RCLD methodology to calculate the loss and make its ACV payment to Readinger.

36. LMPICO did not calculate any portion of the Readinger Loss by reference to or analysis of any alleged increase or decrease in the market value of the Readinger Home, or the market value of any portion of Readinger's property. LMPICO did not conduct an appraisal of the Readinger Home.

37. LMPICO has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

38. LMPICO used commercially-available computer software to make its RCLD calculations, called Xactimate®.

39. On or about April 23, 2020, LMPICO calculated the RCV of Readinger's damaged property at $16,909.66 through Xactimate® price list OHCL8X_APR20.

40. LMPICO then used the same Xactimate® price list to calculate the depreciation for the Readinger damaged property at $1,574.84.

41. Readinger was underpaid and deprived of the use of her money from the time she should have received it until the date she recovers the wrongfully withheld labor amounts, as more fully described below.

### D. LMPICO's Calculation of Bartholomew's ACV Payment

42. In adjusting Bartholomew's claim, LMPICO affirmatively and unilaterally chose to use the RCLD methodology to calculate the losses and make its ACV payment to Bartholomew.

43. LMPICO did not calculate any portion of the Bartholomew Loss by reference to or analysis of any alleged increase or decrease in the market value of the Bartholomew Home, or the market value of any portion of Bartholomew's property. LMPICO did not conduct an appraisal of the Bartholomew Home.

44. LMPICO has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

45. LMPICO used commercially-available computer software to make its RCLD calculations, called Xactimate®.

46. On or about October 21, 2020, LMPICO calculated the RCV of Bartholomew's damaged property at $31,264.11 through Xactimate® price list OHCO8X_JUL20.

47. LMPICO then used the same Xactimate® price list to calculate the depreciation for Bartholomew damaged property at $6,528.12.

48. Bartholomew was underpaid and deprived of the use of his money from the time he should have received it until the date he recovers the wrongfully withheld labor amounts, as more fully described below.

### E.  LMPICO's Practice Of Withholding Labor From ACV Payments

49. LMPICO uses a software product called Xactimate® (from Xactware Solutions) to calculate ACV payments.  Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and is also used to calculate depreciation to determine ACV payments under the RCLD methodology.

50. The only methodology used by Xactimate® to calculate ACV payments for structural damage is the RCLD methodology.

51. LMPICO unfairly manipulates Xactimate® to withhold labor from ACV payments.

52. Xactimate® generates its estimating prices from its ongoing fair market pricing research.  Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

53. When adjusting property insurance claims with Xactimate®, the property adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property and other objective information such as the age or condition of the roofing, siding or other damaged building materials.

54. The Xactimate® software program then breaks down each individual necessary step in the repair process into an individual "line item."  Each line item has a specific dollar value.  The line items are totaled to obtain the RCV values, and then depreciation is applied.

55. Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software used to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



56. Xactimate® can also be used to withhold labor from ACV payments by failing to include corresponding line items for steep and high roofs. In Xactimate®, when there is property damage to a steep roof pitch or a high roof, Xactimate® uses two corresponding line items for the property repair. One line-item is exclusively for the additional labor costs associated with *removing* the old roofing materials. The second labor line item is exclusively for the additional labor costs to *install* new roofing materials on the steep or high roof pitch.

57. Unlike many of its competitors, LMPICO surreptitiously manipulates Xactimate® to eliminate one of the two corresponding line-items for steep or high roof pitch from the Xactimate® estimates to withhold labor from ACV payments. Specifically, the line-item for the increased labor costs associated with removing damaged roofing materials (*e.g.*, shingle removal) from a steep pitched or high roofing surfaces is typically withheld from Xactimate® estimates prepared by LMPICO. When this removal labor line item is removed from the policyholder's estimate, the monetary value as calculated by Xactimate® is also removed, thereby withholding labor from the ACV payments of LMPICO policyholders.

58. Both Bartholomew and Readinger had labor withheld from their ACV payments due to LMPICO's manipulation of Xactimate®.

**THE PROPOSED CLASS ACTION DEFINITION**

59. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This

9

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein are ascertainable.

60. The proposed labor withholding class that Plaintiffs seek to represent is defined as follows:

> All LMPICO policyholders who made:
>
> (1) a structural damage claim for property located in the States of Arizona, Connecticut, Illinois, Kentucky, Maryland, Ohio, Tennessee and Utah; and
>
> (2) for which LMPICO accepted coverage and then chose to calculate ACV through Xactimate® software; and
>
> (3) which resulted in an actual cash value payment during the class period from which labor was withheld from the policyholder due to the "manipulation of Xactimate® software" as described herein.

61. The proposed class definition, when referencing "labor," includes all labor, including but not limited to, laborer's equipment, removal labor and contractor's overhead and profit.

62. In this pleading, the phrase "manipulation of Xactimate® software" means: (1) affirmative application of the "Depreciate Removal," "Depreciate Non-Material" or "Depreciate O&P" depreciation option settings; or (2) failure to pay for both corresponding removal and installation line items for steep or high pitched roofs when the one corresponding steep or high pitched roof line item was identified as payable by Defendant's own adjusters.

63. Included in the putative definition class are policyholders who would have received an actual cash value payment but for the withholding of labor.

64. Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the

policy. Certain amounts initially withheld as labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, interest on the amounts improperly withheld, for the time period of withholding.

65. Excluded from the putative class definition are: (1) all claims arising under policy forms expressly permitting the withholding of labor from ACV payments due to the manipulation of Xactimate® software within the text of the policy form; (2) any claims in which the initial ACV payment exhausted the applicable limits of insurance; (3) Plaintiffs' counsel; (4) Defendant and its affiliates; and (5) the Court to which this case is assigned and its staff.

66. The proposed class period is the maximum limitations period as allowed by law and arguments of counsel.

67. Plaintiffs reserve their right to amend, broaden or narrow the class definition after discovery.

## AMOUNT IN CONTROVERSY

68. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

69. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Arizona, Connecticut, Illinois, Kentucky, Maryland, Ohio, Tennessee and Utah have been damaged by Defendant's actions. The names and addresses of the members of the

proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

70. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

71. Defendant has acted on grounds generally applicable to the proposed class in that Defendant has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

72. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant's policy language allows it to withhold labor costs in its calculation of ACV payments;

    b. Whether Defendant's policy language is ambiguous concerning the withholding of labor costs in calculating ACV payments, and, if so, how Defendant's insurance policies should be interpreted;

    c. Whether Defendant's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

    d. Whether Defendant has a custom and practice of withholding labor costs in its calculation of ACV payments;

    e. Whether Plaintiffs and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in its calculation of ACV payments;

    f. Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

>Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages.

73. Plaintiffs' claims are typical of the claims of the proposed class members, as they were adversely affected by Defendant's custom and practice concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because their claims arise from the same practices and course of conduct (*i.e.*, the manipulation of Xactimate® software to withhold labor) that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

74. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class while recognizing the risks associated with litigation.

75. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the

resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

76. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

77. Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual members of the proposed class are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

78. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

79. Plaintiffs may seek, in the alternative, certification of an issues class.

80. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

81. Plaintiffs restate and incorporate by reference all preceding allegations.

82. Defendant entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Defendant, Plaintiffs and members of the proposed class, as well as the manner in which claims for covered losses are handled.

83. The policies of insurance between Defendant and Plaintiffs and the other members of the proposed class are binding contracts under Arizona, Connecticut, Illinois, Kentucky, Maryland, Ohio, Tennessee and Utah law, and are supported by valid consideration in the form of premium payments in exchange for insurance coverage.

84. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

85. In order to receive ACV claim payments, Plaintiffs complied with all material provisions and performed all their respective duties with regard to their insurance policy.

86. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV through Xactimate® using the RCLD methodology.

87. Defendant breached its contractual duty to pay Plaintiffs and members of the labor necessary to return damaged property to the damaged properties' *status quo ante* by withholding labor from ACV payments.

88. Defendant's actions in breaching its contractual obligations to Plaintiffs and members of the proposed class benefitted and continue to benefit Defendant. Likewise, Defendant's actions damaged and continue to damage Plaintiffs and members of the proposed class.

89. Additionally, Defendant breached its contractual duties to Plaintiffs by failing and refusing to promptly pay the amounts individually owed to Plaintiffs as required by the terms of the Policies. As a result, Plaintiffs have been damaged in the amount of the unpaid portion of their claim, including all such amounts that should have been paid by Defendant as a result of the subject losses.

90. Defendant's actions in breaching their contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

91. Given the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to indemnity them for the unlawfully withheld labor from their ACV payments.

92. Plaintiffs and members of the proposed class seek any and all relief as may be permitted under applicable law to remedy the ongoing breaches of contract.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

93. Plaintiffs restate and incorporate by reference all preceding allegations.

94. This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of

whether further relief is or could be claimed.

95. A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

96. Plaintiffs and members of the class have complied with all relevant conditions precedent in their contracts.

97. Plaintiffs seek, personally and on behalf of the proposed class, a declaration that Defendant's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the RCLD methodology employed here.

98. Plaintiffs further seek, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion by Defendant in engaging in the conduct described herein, as may be permitted by law.

99. Plaintiffs and members of the proposed class have suffered injuries.

## JURY DEMAND

100. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1. Enter an order certifying this action as a class action, appointing all Plaintiffs as the representatives of the proposed class and appointing Plaintiffs' attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant LMPICO's withholding of labor costs as alleged herein is contrary to and breaches the insurance policy issued to Plaintiffs and members of the class;

3. Enter a preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policies, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6. Award compensatory damages to Plaintiffs for all amounts to which they are entitled pursuant to the subject insurance policies as a result of the Loss;

7. Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class;

8. Pre- and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

    Respectfully submitted,

    */s/ Stephen G. Whetstone*
    STEPHEN G. WHETSTONE (0088666)
    Email: steve@whetstonelegal.com
    **Whetstone Legal, LLC**
    P.O. Box 6, 2 N. Main Street, Unit 2

Thornville, Ohio 43076
Telephone: 740-785-7730
Facsimile:  740-205-8898

and

ERIK D. PETERSON (KY Bar 93003)*
**Mehr, Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
Email: edp@austinmehr.com

J. BRANDON McWHERTER
(TN Bar # 21600)*
**McWherter Scott Bobbitt PLC**
341 Cool Springs Blvd., Suite 230
Franklin, TN  37067
(615) 354-1144
brandon@msb.law

T. JOSEPH SNODGRASS
 (MN Bar #231071)*
**Larson • King, LLP**
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
(651) 312-6500
jsnodgrass@larsonking.com

*Attorneys for Plaintiffs and
Putative Class Representative*

**\*to be admitted** *pro hac vice*